**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1714-16T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

AMEER T. BROWN,

     Defendant-Appellant.

_____

Submitted November 15, 2018 – Decided February 14, 2019

Before Judges Alvarez and Nugent.

On appeal from Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 16-03-0192.

Joseph E. Krakora, Public Defender, attorney for appellant (Kevin G. Byrnes, Designated Counsel, on the brief).

Angelo J. Onofri, Mercer County Prosecutor, attorney for respondent (Tasha M. Kersey, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

A jury convicted defendant Ameer T. Brown of third-degree possession of a controlled dangerous substance (CDS) (heroin), N.J.S.A. 2C:35-10(a)(1) (count one); fourth-degree possession of a defaced firearm, N.J.S.A. 2C:39-3(d) (count four); and fourth-degree maintaining a narcotics nuisance, N.J.S.A. 24:21-21(a)(6) (count eight).[1] On September 30, 2016, the trial judge sentenced defendant to four years imprisonment on the possession of CDS; eighteen months with eighteen months parole ineligibility (as required by statute, N.J.S.A. 2C:43-6(c)) for possession of a defaced firearm; eighteen months for maintaining a narcotics nuisance; and six months for possession of marijuana.[2] All sentences were to be served concurrently. We affirm.

We glean the following facts and circumstances from the trial and pretrial motion record. On February 26, 2014, Detective Joseph Angarone of the Mercer

---

[1] The jury acquitted defendant of third-degree possession with intent to distribute CDS (heroin), N.J.S.A. 2C:35-5(a)(1) and 2C:35-5(b)(3) (count two); third-degree theft by receiving stolen property, N.J.S.A. 2C:20-7(a) (count three); second-degree possession of a firearm during the commission of a drug crime, N.J.S.A. 2C:39-4.1(a) (count five); second-degree possession of a firearm during the commission of a drug crime, N.J.S.A. 2C:39-4.1(a) (count six); and second-degree possession of a firearm during the commission of a drug crime, N.J.S.A. 2C:39-4.1(a) (count seven).

[2] On March 29, 2016, defendant entered an open guilty plea to disorderly persons possession of less than fifty grams of marijuana, N.J.S.A. 2C:35-10(a)(4).

A-1714-16T3

County Prosecutor's Office, Special Investigations Unit, assisted with the execution of search warrants for defendant's person, vehicle, and residence. Angarone was accompanied by members of the Mercer County Narcotics Task Force and the Trenton Police Department, including Lieutenant Michael Novembre, also from the Mercer County Prosecutor's Office. Trenton Police Department Detective Daniel Pagnotta was the lead investigator and evidence officer responsible for the preparation of the warrants.

When defendant arrived home that afternoon with his girlfriend, Michelle Lopez, officers initially executed the warrant for the search of defendant's person. It yielded $1477 in cash, a set of keys, and a bag of marijuana. Officers then served defendant with outstanding municipal arrest warrants, detained Lopez, and opened defendant's apartment with his keys. Upon entry, one of the officers announced that a floor grate in a hallway, situated to the right of what appeared to be a hamper, contained contraband: three handguns and 450 decks of heroin. Angarone testified there were no access points to the grate from outside the apartment.

At the station, defendant told Pagnotta that he wanted to claim ownership of everything. Pagnotta told Novembre, and defendant reiterated that everything belonged to him and not Lopez. Novembre told defendant he could go upstairs

to be read his rights by other officers, and provide a statement, but that there were "no promises."

On videotape, Angarone and Detective Christopher Franicevich reviewed the warrant notification form with defendant, informed him of the pending charges, and explained his Miranda[3] rights. Defendant signed a Miranda waiver, indicating his understanding of his rights and willingness to be interviewed in the absence of an attorney. During the initial colloquy, defendant said "they ain't going to charge me with nothing, right?" and the officer responded only that they would talk during the statement. Angarone added that defendant can either make a statement or not, and that if he did, "we will go from there." Defendant said "[s]o she still don't get charged?" Angarone responded that the officers want to know who owns the drugs and guns found in the home, and that all they "want is the truth."

Defendant proceeded to admit the marijuana was his, claimed the cash was gambling proceeds, and acknowledged buying the three handguns for approximately $200. He also told the officer that other than himself and his girlfriend, only his landlord had access to the apartment. Defendant admitted

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

placing the drugs in the grate, and said that he "put [them] there . . . [a] couple [of] days ago."

The judge conducted a pretrial <u>Miranda</u> hearing and determined that defendant waived his rights voluntarily, knowingly, and intelligently. She rejected defendant's argument that defendant's reason for making the inculpatory statement was the promise his girlfriend would not be charged and that therefore the statement was coerced and inadmissible. The prosecutor played the recorded statement in his presentation to the jury.

The court also ruled, after engaging in analysis pursuant to N.J.R.E. 404(b) and <u>State v. Cofield</u>,[4] that references could be made to the marijuana. The State argued the marijuana had probative value because the small amount in defendant's possession evidenced possession for personal use, while the greater quantity of drugs found in the grate in defendant's apartment evidenced intent to distribute. The prosecutor mentioned marijuana once during opening, as did defense counsel. When cross-examining Angarone, defense counsel played portions of defendant's statement, which included references to marijuana. He mentioned "weed" three times during closing. The judge and counsel agreed upon a limiting instruction which was based on the model jury

---

[4] 127 N.J. 328 (1992).

charge. See Model Jury Charges (Criminal), "Proof of Other Crimes, Wrongs, or Acts (N.J.R.E. 404(b)")" (rev. Sept. 12, 2016). Immediately after the prosecutor mentioned the marijuana in opening, the trial court told the jury that the evidence "was mentioned for the limited purpose of distinguishing between alleged possession of the marijuana for personal use and alleged possession with intent to distribute the heroin found in the apartment."

Pre-trial, the court also addressed the State's application to be allowed to mention the search warrant for defendant's person. Defense counsel objected, but the court nonetheless ruled that references to the warrant could be made. A limiting instruction would follow, however, to the effect that the evidence was being introduced solely to establish that the officers were authorized to stop defendant. The judge also instructed the State at the time by way of "caution," that any "reference should be just a basic reference."

The court conducted an N.J.R.E. 104 hearing regarding defendant's application to admit photographs that were taken by his investigator of the apartment four days before the hearing. Defendant argued that the photographs were relevant to establish that others besides himself, his girlfriend, and his landlord had access to the grate, while the State objected that an inadequate foundation had been proffered for the photographs. The hearing took place more

A-1714-16T3

than two years after the search of defendant's residence, and after a fire in the building which required major construction. The court ruled the photographs were inadmissible.

The judge explained defendant's proposed evidence of third party guilt, the photographs, was inadmissible because no witness was available to assert that the conditions were the same as when the grate was searched. The pictures therefore did not accurately portray the conditions at the time of the execution of the search warrant. In fact, the judge found a substantial foundational problem existed in that it was unclear from the investigator's testimony whether she had even entered the correct building; also, the investigator did not acknowledge the new construction underway inside the building. She further found that defendant's argument that there was access to the grate from the first floor apartment, in any event, was not substantiated by the photographs.

On appeal, defendant raises the following points:

> POINT I
> THE TRIAL COURT ERRONEOUSLY ADMITTED
> HIGHLY PREJUDICIAL HEARSAY EVIDENCE
> SHOWING THAT THE POLICE HAD A SEARCH
> WARRANT FOR THE PERSON OF [] DEFENDANT.
>
> > a. Evidence that the Police Had a Search Warrant
> > for the Person of [] Defendant Was Unduly
> > Prejudicial and Lacking in Probative Value in

Light of the Admission of Evidence that the Police had a Search Warrant for the Residence.

b. The Admission of Evidence that the Police Had a Search Warrant for the Person of [] Defendant Violated [] Defendant's Right to Confront Witnesses.

c. The Limiting Instruction Was Deficient, AND It Did Not Protect Against the Undue prejudice. (Not raised below)

POINT II
[] DEFENDANT'S RIGHT TO PRESENT A COMPLETE DEFENSE WAS INFRINGED WHEN HE WAS DEPRIVED OF THE RIGHT TO PRESENT EVIDENCE OF THIRD PARTY GUILT.

POINT III
THE TRIAL COURT ERRONEOUSLY ADMITTED EVIDENCE SHOWING THAT [] DEFENDANT COMMITTED OTHER OFFENSES.

POINT IV
THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT [] DEFENDANT KNOWINGLY AND VOLUNTARILY WAIVED HIS MIRANDA RIGHTS.

POINT V
[] DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. I, PAR. 1 OF THE NEW JERSEY CONSTITUTION WAS VIOLATED BY THE ACCUMULATION OF ERRORS.

POINT VI
THE FOUR-YEAR PRISON TERM FOR SIMPLE
POSSESSION OF CDS IS EXCESSIVE.

I.

"Traditional rules of appellate review require substantial deference to a trial court's evidentiary rulings." State v. Morton, 155 N.J. 383, 453 (1998). We uphold the trial court's rulings "'absent a showing of an abuse of discretion, i.e., there has been a clear error of judgment.'" State v. Perry, 225 N.J. 222, 233 (2016), as corrected (July 8, 2016) (quoting State v. Brown, 170 N.J. 138, 147 (2001)). "An appellate court applying this standard should not substitute its own judgment for that of the trial court, unless 'the trial court's ruling was so wide of the mark that a manifest denial of justice resulted.'" Ibid. (quoting State v. Marrero, 148 N.J. 469, 484 (1997)); see also State v. Fortin, 189 N.J. 579, 597 (2007). Where there is an abuse of discretion, we "must then determine whether any error found is harmless or requires reversal." State v. Prall, 231 N.J. 567, 581 (2018).

The Rules of Evidence provide that, barring certain enumerated exceptions, "all relevant evidence is admissible." N.J.R.E. 402. Relevant evidence is evidence "having a tendency in reason to prove or disprove any fact of consequence to the determination of the action." N.J.R.E. 401. "In

determining whether evidence is relevant, the inquiry focuses upon 'the logical connection between the proffered evidence and a fact in issue.'" Verdicchio v. Ricca, 179 N.J. 1, 33 (2004) (quoting State v. Hutchins, 241 N.J. Super. 353, 358 (App. Div. 1990)). Conversely, to say "'evidence is irrelevant in the sense that it lacks probative value' means that it 'does not justify any reasonable inference as to the fact in question.'" Id. at 33-34 (quoting State v. Allison, 208 N.J. Super. 9, 17 (App. Div. 1985)).

Evidence may be barred on other grounds:

> Except as otherwise provided by these rules or other law, relevant evidence may be excluded if its probative value is substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the jury or (b) undue delay, waste of time, or needless presentation of cumulative evidence.
>
> [N.J.R.E. 403.]

"The purpose of a [N.J.R.E.] 403 balancing is to determine whether the risk of prejudice to defendant in admitting the [] evidence outweighs its probative worth." State v. Long, 173 N.J. 138, 161 (2002); see also Brenman v. Demello, 191 N.J. 18, 34–35 (2007); State v. Sheppard, 437 N.J. Super. 171, 192 (App. Div. 2014), certif. denied, 221 N.J. 219 (2015). "The trial judge has broad discretion to exclude evidence as unduly prejudicial pursuant to N.J.R.E. 403." State v. Nantambu, 221 N.J. 390, 402 (2015). Evidence is excluded for being

unduly prejudicial only when its "'probative value is so significantly outweighed by [its] inherently inflammatory potential as to have a probable capacity to divert the minds of the jurors from a reasonable and fair evaluation' of the issues in the case." State v. Koskovich, 168 N.J. 448, 486 (2001) (alteration in original) (quoting State v. Thompson, 59 N.J. 396, 421 (1971)).

A.

Defendant asserts that the trial court erred in allowing the State to mention that the police had a search warrant for defendant's person: "[t]he evidence of a search warrant for the person of [] defendant was wholly immaterial to any legitimate issues; nobody alleged that the police acted illegally or capriciously." Defendant also argues that mentioning the two search warrants, for defendant's person and home, was unduly prejudicial to defendant.

Prosecutors are permitted to refer to a search warrant "to convey to the jury that the police were authorized to search a home," but may not make repeated, unnecessary references to it. State v. Cain, 224 N.J. 410, 433 (2016). Essentially,

> [a] search warrant can be referenced to show that the police had lawful authority in carrying out a search to dispel any preconceived notion that the police acted arbitrarily. A prosecutor, however, may not repeatedly mention that a search warrant was issued by a judge if

11

doing so creates the likelihood that a jury may draw an impermissible inference of guilt.

[Id. at 435.]

In deciding admissibility under N.J.R.E. 403, courts weigh the probative value of references to the search warrant against the prejudice to the defendant. State v. Gonzalez, 444 N.J. Super. 62, 81-82 (App. Div. 2016) (finding that while references to a search warrant prejudiced the defendant, there was "no prejudice of sufficient stature to warrant a new trial on this particular ground"); see also Cain, 224 N.J. at 436; State v. Milton, 255 N.J. Super. 514, 520 (App. Div. 1992) (finding that the State's references to the search warrant for defendant's person was irrelevant and "severely prejudice[d] [] defendant's right to a fair trial").

References to a search warrant are problematic where they have the capacity to mislead the jury. State v. Marshall, 148 N.J. 89, 240 (1997). This may happen where the references imply or suggest that the issuing officer had knowledge of guilt not available to the jury. State v. McDonough, 337 N.J. Super. 27, 32 (App. Div. 2001), cert. denied, 169 N.J. 605 (2001). The references must not give rise to an "impermissible inference of guilt." Cain, 224 N.J. at 435.

For example, in <u>Cain</u>, the Supreme Court found objectionable the prosecutor's numerous references to a search warrant, a "[c]ourt authorized search warrant," or a search warrant issued by a Superior Court Judge. 224 N.J. at 435-36. "The constant drumbeat that a judicial officer issued a warrant to search defendant's home had little probative value, but did have the capacity to lead the jury to draw an impermissible inference that the court issuing the warrant found the State's evidence credible." <u>Id.</u> at 436. It would be a good practice "for the judge to sua sponte advise the jury that the issuance of a[] [] warrant or the fact that defendant had been incarcerated should [] play[] no role in their deliberations." <u>Gonzalez</u>, 444 N.J. Super. at 81–82 (citing <u>Marshall</u>, 148 N.J. at 240). In contrast, we found references to a search warrant appropriate in <u>State v. McDonough</u>, where the references to the search warrants "did not imply that the State had presented any evidence to the issuing judge that was also not heard by the jury." 337 N.J. Super. 27, 32-34 (App. Div. 2001).

In this case, the prosecutor made fleeting references solely to explain that police were authorized to stop defendant, and search him and his residence. The references did not make mention of the warrants being issued by a judge. The prosecutor mentioned the search warrant once in opening, and only generally on direct examination, in compliance with the judge's limit on the nature and

number of references.  The prosecutor did not mention that the warrants were judge issued.  Nothing he said would have suggested to the jury that there was additional inculpatory evidence being kept from them.  The trial judge gave a limiting instruction regarding the jury's limited use of the information.

Whether a defendant would affirmatively argue police misconduct to a jury is not the sole basis for admission.  Even if not argued, it would be natural for a juror to wonder why a person in our society is being stopped, or their home searched, and the State is therefore entitled to proffer an explanation.  Thus, there was significant probative value to the testimony and in this case, minimal prejudice to defendant.  "[A] properly instructed jury will not presume guilt based on the issuance of a search warrant."  Marshall, 148 N.J. at 240.  The judge's ruling was an appropriate exercise of her discretion.

### B.

Similarly, defendant's argument that the evidence of a search warrant violated his right to confront witnesses lacks merit.  The evidence regarding the search warrants, even if it implicates hearsay, does not implicate the right to confront witnesses.

"It is well settled that the hearsay rule is not violated when a police officer explains the reason he approached a suspect or went to the scene of the crime

by stating that he did so 'upon information received.'" State v. Bankston, 63 N.J. 263, 268 (1973) (citing McCormick on Evidence, § 248 at 587 (Cleary ed., 2d ed. 1972)). This type of testimony has been held to be admissible in order to show "that the officer was not acting in an arbitrary manner or to explain his subsequent conduct." Id. at 268 (citations omitted). Under Bankston, an officer's testimony is prohibited hearsay only "[w]hen the logical implication to be drawn from the testimony leads the jury to believe that a non-testifying witness has given the police evidence of the accused's guilt[.]" Id. at 271.

Here, the officers' reference to the warrants did not violate defendant's rights under the Confrontation Clause as they merely explained the reason for searching defendant's person, his residence, and his vehicle; no out-of-court statements were thereby introduced. Bankston, 63 N.J. at 268. The evidence only demonstrated that the officers were "not acting in an arbitrary manner" when they stopped defendant. Ibid. In support of the claim, defendant does not cite to even one instance where an officer repeated what "some other person said." Id. at 268-69. Hence, defendant's rights under the Confrontation Clause were not violated as the jury was not presented with actual hearsay testimony.

## C.

We similarly view the judge's limiting instruction as sufficiently protecting defendant from any improper prejudicial effect. The judge explained that even if the police had search warrants, that the jury must not draw adverse inferences from the information, nor speculate as to the reasons the warrants were issued. She iterated that the evidence was being presented solely to demonstrate that the officers were acting within lawful authority. She told the jurors "the existence of warrants [does not] mean[] that [] defendant is some nefarious character of any sort. That would be pure speculation. The existence of warrants is not evidence of [] defendant's guilt." She repeated that they must decide the case based solely on the evidence presented in court. Defense counsel did not specifically assent to the instruction, but neither did he object. The instruction was repeated at the close of trial. We therefore consider defendant's contention to be without merit as the judge did not make a clear error of judgment or otherwise err. Perry, 225 N.J. at 233.

## D.

We also consider the judge's decision to exclude the photographs a proper exercise of discretion, as they lacked the requisite foundational basis for admission. Furthermore, the evidence would have been incapable of raising a

16                                                                                          A-1714-16T3

reasonable doubt as to defendant's guilt. The photographs were taken after the building had a major fire and construction work had begun. It was not clear if the investigator actually entered the correct apartment. No one could testify that the photographs were accurate representations of the premises. They did not establish that the first floor apartment occupants could have had access to the grate. Thus, the judge did not abuse her discretion in excluding the photographs. See ibid.

E.

Nor did the court err in allowing the State to present proof of defendant's possession of a small amount of marijuana. Generally, the Rules of Evidence prohibit the admission of "other crimes, wrongs, or acts . . . to prove the disposition of a person in order to show that such person acted in conformity therewith." N.J.R.E. 404(b). "Other-crime evidence may not be admitted for the purpose of showing a defendant's propensity or predisposition to commit criminal acts; such evidence may only be offered to prove 'a material issue in dispute.'" Fortin, 189 N.J. at 594 (citing N.J.R.E. 404(b)); see also State v. Garrison, 228 N.J. 182, 193-94 (2017). "Put simply, a defendant must be convicted on the basis of his acts in connection with the offense for which he is charged. A defendant may not be convicted simply because the jury believes

that he is a bad person." State v. Skinner, 218 N.J. 496, 514 (2014); see also State v. Prall, 231 N.J. 567, 581-82 (2018).

Evidence may be admitted under N.J.R.E. 404(b) to prove "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute." Thus, "other-crimes evidence is admissible to prove something other than an individual's propensity to commit wrongful acts . . . " State v. Weaver, 219 N.J. 131, 150 (2014). Courts consider whether the other-crimes evidence is: "(1) relevant to a material issue; (2) similar in kind and reasonably close in time to the offense charged; (3) supported by clear and convincing evidence; and (4) its prejudice does not outweigh its probative value." Ibid. (citing Cofield, 127 N.J. at 338).

Under the first prong of the Cofield test, "[o]ther-crime evidence and other-conduct evidence have been found probative of intent and motive." State v. Covell, 157 N.J. 554, 565 (1999). "When an individual's state of mind is at issue, a greater breadth of evidence is allowed." State v. Williams, 190 N.J. 114, 125 (2007). "New Jersey courts generally admit a wider range of evidence when the motive or intent of the accused is material." Covell, 157 N.J. at 565 (citing State v. Rogers, 19 N.J. 218, 228 (1955)). This includes evidentiary

circumstances that "'tend to shed light' on a defendant's motive and intent or which 'tend fairly to explain his actions,' even though they may have occurred before the commission of the offense." Ibid. (quoting Rogers, 19 N.J. at 228). However, where other-crimes evidence is relevant to a material issue, it may still be excludible if the prejudicial impact outweighs the probative value of the evidence. Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 7 on N.J.R.E. 404 (2018); see also State v. Reddish, 181 N.J. 553, 608-09 (2004).

If the trial court decides to admit other-crimes evidence, the court's instruction should "narrowly focus the jury's attention on the specific use of other-crime evidence[.]" Cofield, 127 N.J. at 341; see also State v. Barden, 195 N.J. 375, 390 (2008) ("the court must carefully instruct the jury as to [the] limited use [of other-crimes evidence]").

The trial judge concluded that defendant's use of marijuana met the requirements of N.J.R.E. 404(b) and the four prongs of the Cofield test. The contrast between the quantity of heroin found in the grate and marijuana in his pocket relate to a genuinely disputed material issue: defendant's intent to sell the heroin and not consume it. The marijuana was thus relevant. Possession of the marijuana and the heroin were obviously close in time and both relate to possession of drugs. The evidence was clear and convincing as defendant was

charged with possessing marijuana.  See State v. Collier, 319 N.J. Super. 181, 194 (App. Div. 1998), aff'd o.b., 162 N.J. 27 (1999).  The potential for prejudice was not greater than the probative value.

Additionally, the State's references were minimal.  Immediately after introduction of the evidence, the court gave an appropriate limiting instruction. The court clearly explained to the jury that they would be asked regarding the allegations concerning the heroin, not the marijuana.  The admission of the small amount of marijuana was not an abuse of discretion either.

F.

Defendant contends that the judge abused her discretion in denying defendant's motion to suppress his Mirandized inculpatory statement.  The basis for the argument is that defendant was made a promise off the record that he would not be charged.  That statement is not supported by the record.

"[A]n appellate court reviewing a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Elders, 192 N.J. 224, 243 (2007) (citation omitted).  The court "should give deference to those findings of the trial judge which are substantially influenced by his

opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Johnson, 42 N.J. 146, 161 (1964).

The trial court's findings should only be disturbed if they are so clearly mistaken "that the interests of justice demand intervention and correction[.]" Id. at 162. Only in those circumstances should an appellate court "appraise the record as if it were deciding the matter at inception and make its own findings and conclusions." Ibid.; Elders, 192 N.J. at 244. "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

The trial judge found the waiver in this case to be made "voluntarily, knowingly and intelligently." Miranda, 384 U.S. at 444; State v. Hreha, 217 N.J. 368, 382 (2014). The judge's findings were supported by defendant's statement and signed waiver. Other than defendant's peculiar question to the officer that he was not going to be charged, there is nothing in his statement that indicates he believed any statement he made would not be inculpatory. In context, he may have asked the question intending to inquire about Lopez, not himself. Defendant did not even call as a witness the officer he alleged had made the promise to him. On tape, the officers explicitly told defendant he had

21

the right to remain silent, and that if he made a statement they wanted the truth. There was simply no indication of either coercion or a promise. Thus, the Miranda motion was properly denied.

## II.

Defendant's argument that the cumulative errors in the case mandate reversal of this conviction is so lacking in merit as to not require further discussion in this opinion. R. 2:11-3(e)(2).

## III.

Finally, defendant contends that his four-year prison term for simple possession of CDS was excessive. "Generally, the abuse-of-discretion standard of review applies in appellate sentencing review . . . ." State v. Hudson, 209 N.J. 513, 529 (2012) (citations omitted). The "exercise of discretion [should] be based upon findings of fact that are grounded in competent, reasonably credible evidence" and take into account aggravating and mitigating factors. State v. Roth, 95 N.J. 334, 363 (1984). "The test, then, is not whether a reviewing court would have reached a different conclusion on what an appropriate sentence should be; it is rather whether, on the basis of the evidence, no reasonable sentencing court could have imposed the sentence under review." State v. Ghertler, 114 N.J. 383, 388 (1989).

Defendant had an extensive juvenile record, five municipal court convictions, an active municipal bench warrant, but no indictable convictions. When sentenced, he was twenty-nine with no documented employment history. Given defendant's juvenile history and contacts with the system as an adult, the judge found aggravating factor three, the risk that defendant would commit another offense, and nine, the need to deter him and others from violating the law. See N.J.S.A. 2C:44-1(a)(3), (9). We see nothing in the court's imposition of sentence that indicates the judge did not follow applicable sentencing guidelines or in any other fashion abuse her discretion. The sentence does not shock our conscience. See Roth, 95 N.J. at 364.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1714-16T3