STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. ALBERT
VINCENT LOUIS, JR., DEFENDANT–RESPONDENT.

Argued September 12, 1989—Decided November 6, 1989.

*Annmarie Cozzi,* Deputy Attorney General, argued the cause for appellant (*Peter N. Perretti, Jr.,* Attorney General of New Jersey, attorney).

*Marcia Blum,* Assistant Deputy Public Defender, argued the cause for respondent (*Alfred A. Slocum,* Public Defender, attorney).

PER CURIAM.

We granted certification, 114 *N.J.* 471 (1989), to consider whether the Appellate Division had exceeded its proper scope of review in revising the sentence under appeal here. In *State v. Roth,* 95 *N.J.* 334, 365 (1984), we assured trial courts that if they followed the sentencing guidelines of our Code of Criminal Justice, they need not fear "second-guessing" of their sentencing decisions by appellate courts. We have repeatedly reaffirmed our commitment to this principle of sentencing. *See State v. O'Donnell,* 117 *N.J.* 210, 220 (1989) (Appellate Division "should not have substituted its judgment for that of the trial court"); *State v. Ghertler,* 114 *N.J.* 383, 394 (1989) (when the principles of sentencing are adhered to, "sentencing decisions will be upheld despite the presence of room for reasonable disagreement").

The sentencing guideline at issue here deals with consecutive sentencing. In *State v. Yarbough,* 100 *N.J.* 627 (1985), *cert. denied,* 475 *U.S.* 1014, 106 *S.Ct.* 1193, 89 *L.Ed.*2d 308 (1986), we set down guidelines for courts in fashioning consecutive sentences. In *State v. Baylass,* 114 *N.J.* 169 (1989), we provided a useful summary of their general characteristics:

[I]t suffices to note that they generally concentrate on such considerations as the nature and number of offenses for which the defendant is being sentenced,

> whether the offenses occurred at different times or places, and whether they involve numerous or separate victims. The *Yarbough* criteria conclude by placing an outer limit on "consecutive sentences for multiple offenses not to exceed the sum of the longest terms (including an extended term, if eligible) that could be imposed for the two most serious offenses." [*Id.* at 180 (citations omitted).]

The *Yarbough* opinion ends with the statement: "We recognize that even within the general parameters that we have announced there are cases so extreme and so extraordinary that deviation from the guidelines may be called for." *Yarbough, supra,* 100 *N.J.* at 647.

The defendant's crimes would test the objectivity of any principled sentencer. For purposes of this appeal, we accept the statement of facts in the State's Appellate Division brief.

In the early morning hours of May 4, 1984, defendant and a woman companion entered the Trenton apartment of a young woman. Defendant trapped the woman in her bedroom. She called out to her child to flee. The other criminal caught her child and dragged her into the bedroom. Defendant had knives brought from the kitchen, held one at the throat of the mother and had one held at the back of the child. Despite threats, the mother refused to remove her clothing in her child's presence. After the child was taken away, defendant forced the mother to turn over her money, dragged her into the bathroom, sexually assaulted her, and slashed her with the knife. He dragged her into the living room where she saw her daughter gagged and bound with telephone wire around her hands, feet, and neck. She too was bound and gagged. Defendant told the child to say her prayers. He stabbed the mother and child, and appeared to choke the child to death. Although the mother feigned unconsciousness, defendant continued to stab her. The two bound bodies were thrown back into the bedroom. The criminals started a fire in the bedroom of the apartment and fled. Miraculously, the mother, with her hands still tied behind her back, managed to escape from the burning apartment, and her daughter, who was believed to be dead, came down the stairs behind her.

It is unlikely that any horror could exceed this. Consequently, the State poses in its petition to us the question whether such a matter is "the extreme and extraordinary case" referred to in *State v. Yarbough,* where deviations from its guidelines may be called for. The answer to that question is quite easy. The extraordinary bestiality of these crimes would well warrant a departure from *Yarbough*'s presumptive outer limits. The incalculable cruelty of raping a mother and stabbing her minor child in the presence of each other are aggravating factors not mentioned in the Code. *See State v. O'Donnell, supra,* 117 *N.J.* at 217 (when intent is an element of an offense, it may not be considered an aggravating factor). The crimes cry out for something beyond the norm. The only question is whether their horror warrants a wholesale departure from any considerations of principled sentencing in favor of fashioning the longest sentence possible.

In a jury trial, this defendant was convicted of two counts of attempted murder, two counts of kidnapping, one count of robbery, one count of theft, two counts of aggravated assault, one count of aggravated sexual assault, one count of aggravated arson, one count of possession of a weapon for an unlawful purpose, and one count of unlawful possession of a weapon. The trial court, after merging the theft into the robbery, the aggravated assault into the attempted murder, and the unlawful possession of a weapon and possession of a weapon for an unlawful purpose into the attempted murder, sentenced the defendant as follows:

Attempted murder of the mother—ten years with five years parole ineligibility.

Attempted murder of the child—ten years with five years parole ineligibility.

Kidnapping of the mother—thirty years with fifteen years parole ineligibility.

Kidnapping of the child—thirty years with fifteen years parole ineligibility.

Robbery of the mother—twenty years with ten years parole ineligibility.

Sexual assault upon the mother—twenty years with ten years parole ineligibility.

Aggravated arson—ten years with five years parole ineligibility.

The court ordered all sentences to run consecutively to each other, making defendant's sentence an aggregate of 130 years with sixty-five years of parole ineligibility.

The Appellate Division affirmed defendant's conviction in all respects but remanded for reconsideration of sentence in light of *State v. Yarbough,* which had been announced on October 7, 1985, while the appeal was pending.

On remand, the trial court reimposed the aggregate sentence of 130 years with sixty-five years of parole ineligibility. At resentencing the court concluded that the case was the exceptional case to which *Yarbough* referred and thus the sentence it had imposed was proper. Specifically, the court stated:

> [I]f the case of State against Albert V. Louis is not an exception the Supreme Court shouldn't have this paragraph in there because if there was ever and if there ever will be an exception it is the case before me. State against Albert V. Louis is an exception. The circumstances are so extreme and so extraordinary that they just cry out and demand that I follow these words and these words allow for an exception. If it is not an exception, then there are none.

When we said in *State v. Yarbough* that some cases might warrant a departure from its guidelines, we did not intend that the sentencer would wholly disregard the principles that relate to consecutive sentencing. Among the factors mentioned in *Yarbough* that the trial court declined to apply was whether the crimes and their objectives were predominately independent of each other, whether the crimes were committed at different times or separate places, and whether there was any double-counting of aggravating factors. In the trial court's view, it was

> mandatory that a person who has the capacity to be as cruel and inhuman as [defendant was] on May 4, 1984, not ever be given the chance to wreak his

> havoc on law abiding citizens again. * * * It is absolutely necessary that he never return to the streets of our civilized society. * * * There can be no justification to give him anything less than he intended to give his victims and that is the maximum allowed by law.

Yes, the crimes did involve separate acts of violence against multiple victims, but the crimes and their objectives did not seem to be predominantly independent of each other. Nor were they committed at different times or in separate places rather than being committed so closely in time and place as to indicate a single period of aberrant behavior. Nor can we be certain from this sentence that the court did not double-count aggravating factors by applying the horror of the assaultive crimes to each individual crime. For example, was the robbery the most extreme robbery conceivable? What was there about the robbery that called for the consecutive feature of the sentence?

Another of the guidelines of *Yarbough* is that successive terms for the same offense should ordinarily not be equal to the punishment for the first offense. Even though there were multiple victims here, the trial court should have given at least some consideration to that factor in its sentencing decision.

In *State v. Roth, supra,* 95 *N.J.* at 364, we stated that one of the three traditional bases for review of trial court sentencing is failure to follow sentencing guidelines. In light of the failure of the trial court to consider the criteria of *Yarbough,* the Appellate Division took it upon itself on the second occasion to sentence the defendant to sixty years with thirty years parole ineligibility. There may be something facile about fashioning a sentence in this way, employing the two kidnappings here to fix the sentence of sixty years without possibility of parole for thirty years. Kidnapping is a specially-graded offense. For first-degree kidnapping the maximum authorized sentence is thirty years with fifteen years of parole ineligibility. *N.J.S.A.* 2C:13–1(c)(1); 2C:43–6(b). In some ways the kidnapping counts appear to have inflicted the least horror or physical harm on the victims. Thus, had the kidnapping counts not been returned by the jury, the victims could not realistically have

been seen to have suffered any less horror. But in that scenario, *i.e.*, had there been no kidnapping convictions, the strict *Yarbough* guideline of not exceeding the sum of the longest terms for the two most serious offenses might well have seemed inappropriate. At the time of sentencing, attempted murder was graded one degree below a first-degree crime. *See L.* 1986, *c.* 190 (upgrading attempted murder to a first-degree crime). The two most serious offenses in terms of the available sentences would have been the robbery and the rape, with a maximum exposure of forty years with twenty years of parole ineligibility. Adhering strictly to the *Yarbough* guidelines would especially seem inappropriate when, as here, the attempted murders of the two victims were each in the presence of the other and the rape of the mother was almost in the young child's presence.

We could well conceive a sentencing court's concluding that more than twenty years of imprisonment without parole was needed to make the punishment truly fit the crimes. But we must agree with the Appellate Division that such a finding does not warrant a wholesale departure from any principled basis for fashioning the consecutive features of a sentence. This determination does not mean that every crime after two is a "free crime." It does mean that the successive crimes need not necessarily be graded at the maximum range. As we noted in *State v. Zola*, 112 *N.J.* 384, 436 (1988), the imposition of the sentence of death for the murder count "does not dictate the imposition of maximum consecutive sentences for all related offenses."

Finally, we have considered whether our conclusion that this case is "so extreme and so extraordinary" that deviation from the guidelines is warranted calls for a further remand to fashion a sentence that would exceed the sixty and thirty limit for the two kidnapping counts. As noted, the two kidnapping counts may not reflect the punishments most fitting for these crimes. Surely the rape, attempted murders, and arson could grade out at the top of the sentencing ranges, warranting fifty

years with twenty-five years of parole ineligibility even before consideration of the kidnapping and robbery counts. And as an objective factor warranting the departure here we stress the two attempted murders. As noted, the Legislature has recently upgraded this offense to one of the first degree, demonstrating special sentencing concerns. *See State v. Serrone*, 95 *N.J.* 23, 27 (1983) (life sentence for murder is an "ordinary" sentence, not an "extended term" warranting prohibition of two consecutive life sentences); *cf. State v. King*, 215 *N.J.Super.* 504, 522 (App.Div.1987) (holding that the same gunshots that threatened two pursuing police officers warranted maximum but not consecutive sentences when underlying sentences were already consecutive to a thirty-year federal sentence for the same bank robbery). We recognize that "the exercise of appellate original jurisdiction over sentencing should not occur regularly or routinely; in the face of deficient sentences, a remand to the trial court for resentencing is strongly to be preferred." *State v. Jarbath*, 114 *N.J.* 394, 411 (1989). But in light of the long history of this case we have resolved not to remand for further proceedings.

In reviewing the Appellate Division sentence of thirty years without possibility of parole, we observe that there is a rough sense of proportionality to it in that the Legislature has set that figure as the "real time" sentence for non-capital murder. *N.J.S.A.* 2C:11–3(b). In addition, the most aggravated forms of kidnapping, which call for a sentence of twenty-five years without possibility of parole in cases where the kidnapping of a minor child is aggravated by sexual or other offenses, also call for merger of the aggravating crimes in the predicate kidnapping crime. *N.J.S.A.* 2C:13–1(c)(2). These legislative demarcations of the outer limits of incapacitation of violent criminals give us some sense of proportionality to be applied in fashioning consecutive sentences in cases that might occasion departure from the *Yarbough* guidelines.

The crimes cry out for vengeance, but atavism must yield to the organizing principles of a just society. "[T]here can be no

258

justice without a predictable degree of uniformity in sentencing." *State v. Hodge*, 95 *N.J.* 369, 379 (1984). There can be no uniformity if sentencing judges use subjective criteria in place of the objective criteria of the Code. Some cases, indeed, may be "so extreme and so extraordinary that deviation from the guidelines may be called for." *Yarbough, supra,* 100 *N.J.* at 647. That does not mean that all consecutive sentencing criteria are to be disregarded in favor of fashioning the longest sentence possible. As noted, the Legislature has given us some sense of proportionality in its view of incapacitation for the most destructive of offenses. Within these parameters we shall continue to strive towards a predictable degree of uniformity in sentencing. The Appellate Division's sentence and judgment are closer to that goal than were the trial court's.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN–7.

*For reversal*—None.